**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**Ft. Myers Division**

| | | |
|---|---|---|
| SIERRA CLUB and ENVIRONMENTAL | ) | |
| CONFEDERATION OF SOUTHWEST FLORIDA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00013-SPC-NPM |
| | ) | |
| U.S. FISH AND WILDLIFE SERVICE et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' OPPOSED
JOINT MOTION TO DISMISS COUNT ONE AND THREE OF PLAINTIFFS'
FIRST AMENDED COMPLAINT**

Plaintiffs respectfully submit that Defendants' Opposed Joint Motion to Dismiss

Count One and Three must be DENIED for the following reasons: (1) Defendants'

correspondence purportedly "rescinding" final agency actions has no legal effect;

(2) Defendants' actions are subject to exceptions to the mootness doctrine, and

(3) Plaintiffs' claims challenge final agency actions.

**FACTUAL BACKGROUND**

The Florida Panther is Florida's official state animal and one of the most

endangered species in the world. ECF No. 24 ¶ 23. Today, there are fewer than 200

adult Florida Panthers in existence, and the only breeding population is located in

southern Florida. Id. ¶ 24. Motor vehicle collisions are responsible for the vast majority

of panther deaths. Id. ¶¶ 26–27.

1

The Florida Panther's continued existence is threatened by a long list of road expansion projects in and near prime panther habitat.  Id. ¶¶ 3–4, 32.  Among other things, in the coming years, the Florida Department of Transportation (FDOT) intends to expand more than 55 miles of State Road (SR) 29's seventy-five miles through prime panther habitat and more than half of SR 82's twenty-three miles are already actively in construction for expansion."  Id. ¶ 32.  Relevant to this motion, FDOT has approved plans to expand eighteen miles of SR 29, one of the deadliest roads for panthers in the state.  Id. ¶¶ 28, 31, 32.  The expansion would double the size of SR 29 from two lanes to four lanes across four highway segments.  Id. ¶ 29.

As is the case with most road expansion projects, FDOT's plans for SR 29 have been years in the making.  The project requires the agency to coordinate with federal agencies to ensure compliance with federal environmental laws, including the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq., and the Endangered Species Act (ESA), 16 U.S.C. §§ 1531 et seq.

In 2009, FDOT began coordinating with U.S. Fish and Wildlife Service (USFWS).  ECF. No. 35-1, at 2; ECF No. 35-2 at 23–26.  On July 8, 2015, FDOT provided USFWS with a biological assessment of the project, and asked USFWS to initiate formal consultation under Section 7 of the ESA.  Id.  On January 22, 2016, USFWS issued a biological opinion (BiOp) for the SR 29 expansion.  ECF No. 24 ¶ 33.  See also ECF No. 35-1 at 1–36.  On June 10, 2016, USFWS amended that BiOp.  ECF No. 24 ¶ 34.  See also ECF No. 35-1 at 37–38.  On April 11, 2017, FDOT issued a determination that the SR 29 project would have no significant effects on the

environment, and so invoked a "categorical exclusion" (CE) from further review under NEPA.  ECF No. 24 ¶ 35.  See also ECF No. 35-2 (categorical exclusion document).  FDOT has not abandoned or withdrawn this project.

Throughout this time, there has not been funding or a construction schedule assigned for the planned road expansions, because they are at the design phase of implementation.[1]  The agencies conducted and concluded their environmental assessments against this backdrop.  FDOT has not abandoned, modified or withdrawn the project.

On January 9, 2020, Plaintiffs filed this action challenging both USFWS' BiOp (Count I) and FDOT's CE (Count III).  ECF No. 1 ¶¶ 61–67, 75–77.  Plaintiffs amended the complaint on March 30, 2020, adding a claim related to a different road segment.  ECF No. 24.  On April 14, 2020, the Parties submitted a joint proposed schedule, ECF No. 27, and the Court entered the scheduling order on April 24, 2020, ECF No. 30.  The Court's order set the deadline for producing the administrative record for June 30, 2020.  Id.

On June 26, 2020, Defendants moved to dismiss Counts I and III as moot relying solely on two emails and a letter apparently exchanged by the agencies in the last few weeks.  ECF No. 35.  Defendants claim that this correspondence is sufficient to "rescind" their SR 29 CE and BiOp—official agency actions years in the making—and thus deprive

---

[1] See ECF No. 24 ¶¶ 33–35; ECF No. 35-1, at 2 (construction unfunded, but "anticipated"); Exhibit A, at 1–3, App'x A (same); SIS Plan (same); LRTP (same).  The Court may take judicial notice of public records.  Fed. R. Evid. 201(b); Universal Express, Inc. v. U.S. S.E.C., 177 Fed. App'x 52, 53 (11th Cir. 2006).

the court of jurisdiction over Plaintiffs' related claims.  Id.  Notably, Defendants'

correspondence relies on the lack of funding assigned to this project as the purported

basis for their effort to rescind.  Defendants also moved the Court for an "extension" of

time to produce the administrative record for SR 29 during the pendency of this motion,

ECF No. 36,[2] a request that for all practical purposes has deprived the Plaintiffs of access

to records FDOT seeks to shield from review by claiming that the recent correspondence

renders the matter moot.

Defendants' brazen actions to deprive this Court of jurisdiction have no legal

effect.  They are a transparent attempt to break up similar claims in this litigation to

obscure the bigger picture—and so the full impact of the Defendants' decisions—from

the Court's view.  Defendants' motion lacks merit and must be denied.

## STANDARD OF REVIEW

Defendants claiming that a matter has become moot bear the heavy burden to

prove that the "challenged conduct cannot reasonably be expected to start up again."

Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 221 (2000) (quoting Laidlaw, 528

U.S. 167, 189 (2000)).  Defendants argue it is Plaintiffs' burden to prove the case is not

moot, citing Williams v. Poarch Band of Creek Indians, 839 F.3d 1312, 1314 (11th Cir.

2016), but that case is inapposite, as it did not involve a claim of mootness.

---

[2] Plaintiffs responded in opposition on June 30, 2020, arguing that they would be
prejudiced by not having access to the record when responding to Defendants' motion to
dismiss.  ECF No. 38.  The Court initially stayed the deadline to produce the record
pending Plaintiffs' response, ECF No. 37, but then did not rule on the motion.

## ARGUMENT

Defendants' claims that they have "rescinded" the CE and BiOp for the SR 29 road expansion project do not strip this Court of subject matter jurisdiction over Counts I and III. Defendants' correspondence, which was plainly undertaken to evade judicial review of the SR 29 project in this litigation, has no legal basis or effect. The agencies lacked the authority to "rescind" the BiOp and CE, and the manner in which they purported to accomplish rescission has no such effect. Even if the agencies enjoyed this authority, Plaintiffs' claims would fall under exceptions to the mootness doctrine, because Defendants have not met their heavy burden of demonstrating that the challenged conduct cannot reasonably be expected to recur. While Defendants' counsel make many assurances to the Court in their motion, the agencies' correspondence submitted with the motion contains no such safeguards against recurring unlawful conduct.

Defendants also attempt to avoid review under the APA by claiming that their post-suit correspondence over email can undo the final agency actions at issue in this case. But because the purported rescission is unauthorized and ineffective, USFWS' BiOp and FDOT's CE remain "final agency actions" subject to judicial review. Additionally, Counts I and III are final agency actions because the legally deficient BiOp and CE mark the consummation of the agencies' decision-making process and carry significant legal consequences for the survival and recovery of the Florida Panther. For these reasons, Defendants' motion must be denied.

I.      **DEFENDANTS' POST-SUIT CORRESPONDENCE HAS NO LEGAL EFFECT.**

Defendants' recent inter-agency correspondence, on which they rely to claim they have "rescinded" the BiOp and CE for the SR 29 road expansion, has no legal effect on Plaintiffs' claims.  FDOT claims that on June 5, 2020, it decided to "rescind" the CE for this project in response to an internal email dated May 27, 2020, which requests "rescission" on the basis that funding for the project wasn't provided for in planning documents published in 2016 and 2018.  See ECF Nos. 35-4; 35-3.  Defendants then submit a June 12, 2020, email from USFWS to FDOT, referencing a letter reflecting FDOT's "intention" to rescind its categorical exclusion.  See ECF No. 35-5.  USFWS states that based on this letter and FDOT's claim that it does not "intend" to construct the project for another ten years, USFWS no longer considers its 2016 BiOp "operative."  Id.

None of this correspondence is supported by any affidavit or other sworn statement attesting to the official significance of the documents, or to the authority of the purported signatories to act on behalf of the respective agencies to "rescind" official agency actions.  None of the documents cites a legal basis or legal authority for the actions purportedly taken.  And none of them disavows the agency actions at issue here.

This is likely because nothing in NEPA, the ESA, or either statute's implementing regulations and accompanying agency guidance authorizes agencies to "rescind" a CE or BiOp already rendered at the conclusion of a deliberative process.  To undo those actions, an agency would have to either reinitiate review or terminate the underlying project requiring environmental review.  Neither has been done here.  As FDOT and USFWS were not authorized to "rescind" the CE and BiOp, their purported actions are unlawful

and have no legal effect.  An agency "literally has no power to act . . . unless and until Congress confers power upon it."  Louisiana Pub. Serv. Comm'n v. F.C.C., 476 U.S. 355, 357 (1986).  See League of Conservation Voters v. Trump, 363 F. Supp. 3d 1013 (D. Alaska 2019) (vacating the Trump Administration's withdrawal of national monument designations made by the prior administration because Congress had only given authority to make, not remove, designations).

When passing NEPA, Congress delegated authority to the Council for Environmental Quality (CEQ) to design the process by which NEPA analyses would operate.  42 U.S.C. §§ 4332(2)(B), 4344.  Pursuant to this authority, CEQ promulgated regulations that control agencies' implementation of NEPA.  40 C.F.R. pt. 1500.  Not one of those regulations authorize the rescission of a final CE.  Instead, CEQ's regulations create a process whereby a federal agency must initiate NEPA review early in its planning process, id. §§ 1501.2, 1500.1(b), and must update its analysis by reinitiating review when the underlying action changes, see id. § 1502.9(c)(1).  Nothing in the regulations authorizes an agency to simply rescind a CE after an agency has completed NEPA review and has not terminated the underlying project or begun supplementing its analysis, claiming a possibility that the project may change in some unknown way at some unknown future time.  ECF Nos. 35-3, 35-4.  This is the exact scenario at play here.

FDOT's claim that "rescission" is appropriate because construction of the project is years away ignores the fact that road expansion projects typically take years, and flies in the face of the NEPA process, which provides that NEPA determinations be made as early as possible before the commitment of resources.  40 C.F.R. § 1502.2(f).  FDOT has

not disavowed the propriety of the CE it rendered in this case, meaning that it has provided no guarantee that it will undertake the additional NEPA review that would be required when a CE is not invoked.  FDOT also has not identified substantial changes to the project, and has not abandoned the project or plan.[3]  The supposed revelation that the project is not yet funded is not a change at all, because that has been the case since FDOT began consultation with USFWS, and was the case when FDOT rendered its CE.[4]  FDOT's attempt in a matter of days and with the stroke of a pen to undo a NEPA determination that took years to complete instead represents an attempt to evade judicial review of this project.  If FDOT had wanted to render its CE ineffective, it would have had to disavor the CE, reinitiate review for purposes of supplementation or terminate the SR 29 expansion.

The ESA similarly does not authorize USFWS to deem a duly issued BiOp "inoperative" without reinitiating consultation or without finding that the underlying project has been terminated.  The ESA authorizes USFWS to consult with federal agencies and requires USFWS to promulgate regulations creating that process.  16 U.S.C. § 1536(a)–(b), (f).  As with NEPA, the authorized process for ESA consultation occurs early and must be reinitated to update the information should project changes of some

---

[3] See, e.g., SR 29 Design Project, FDOT, http://www.swflroads.com/sr29/sr82tocountyline/index.html (accessed July 9, 2020) (estimating completion date in June 2021).  The Court may take judicial notice of information available on a government website.  Fed. R. Evid. 201(b); R.S.B. Ventures, Inc. v. F.D.I.C., 514 Fed. App'x 853, 856, n.2 (11th Cir. 2013).

[4] See ECF No. 24 ¶¶ 33–35; ECF No. 35-1, at 2 (construction unfunded, but "anticipated"); Exhibit A, at 1–3, App'x A (same); SIS Plan (same); LRTP (same).

kind occur at some point in the future.[5]  Where USFWS regulations allow agencies to terminate consultation, that termination must occur prior to the issuance of a BiOp.  50 C.F.R. § 402.14(m).

Here, USFWS duly completed and issued a BiOp at the conclusion of its deliberative process.  Defendants have identified no change to the proposed project to trigger reinitiation of consultation, and indeed have not reinitiated consultation.  They have not even stated that reinitation of consultation will be required.  The notation that FDOT "may" reiniatiate consultation makes clear that USFWS is not requiring a reinitation of consultation, and that therefore the BiOp continues to have legal effect as the agency's final determination.  That USFWS' email has no legal effect is further demonstrated by the fact that it appears to have been signed by an agency biologist, rather than a high-level official.  Compare ECF No. 35-5 with ECF No. 35-1, at 19, 35.[6]

Because neither agency is authorized to undo a CE or BiOp without terminating the underlying agency project or starting the reinitiation or supplementation process, the Defendants' purported "rescission" has no legal effect.  Plaintiffs' claims therefore continue to present a live controversy and are not moot.

---

[5] 50 C.F.R. § 402.10–11 (requiring early assessments for major construction activities such as roads projects); § 402.16 (requiring reinitiation); Final ESA Section 7 Consultation Handbook, USFWS, 3-11 to 3-12 (Mar. 1998) (same) [hereinafter "ESA Handbook"]; id. at 3-6, 4-4 (requiring that USFWS "be involved early and to resolve problems as they are identified"); id. at 4-11 (formal consultation should precede NEPA scoping); id. at 4-63 to 4-65 (explaining the reinitiation process).
[6] Staff Directory, USFWS, S. Fla. Ecological Servs. Field Office, https://www.fws.gov/verobeach/StaffDirectory.html (last updated June 11, 2020).  The Court may take judicial notice of information available on a government website.  Fed. R. Evid. 201(b); R.S.B., 514 F. App'x at 856, n.2.

II.     PLAINTIFFS' CLAIMS ARE SUBJECT TO EXCEPTIONS TO THE
        MOOTNESS DOCTRINE.

    A.      DEFENDANTS FAILED TO DEMONSTRATE THE ALLEGED
            VIOLATIONS CANNOT REASONABLY BE EXPECTED TO
            RECUR.

Even if Defendants' purported "rescissions" were given any effect, Defendants'

motion still fails because the challenged actions are subject to exceptions to the mootness

doctrine.  In arguing that Plaintiffs' claims are moot, Defendants admit, but fail to fully

brief, the exceptions to the mootness doctrine and address only the capable of repetition,

yet evading review exception.  ECF No. 35, at 12–13.  The most apt exception in this

case is voluntary cessation.

        "It is well settled that 'a defendant's voluntary cessation of a challenged practice

does not deprive a federal court of its power to determine the legality of the practice.'"

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)

(quoting City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 289 (1982)).  Defendants

bear the "formidable" "heavy burden" of persuading the court that "the challenged

conduct cannot reasonably be expected to start up again."  Doe v. Wooten, 747 F.3d

1317, 1322 (11th Cir. 2014).

        The Court of Appeals for the Eleventh Circuit requires government defendants to

meet this heavy burden by demonstrating that they have unambiguously terminated the

offending conduct, and directs courts to weigh the following factors:  (1) whether the

termination of the offending conduct is "unambiguous"; (2) whether the change in

government policy or conduct is the result of substantial deliberation; and (3) whether the

government will have to consistently apply the new policy or adhere to the new course of

conduct.  Doe, 747 F.3d at 1322; National Association of Boards of Pharmacy v. Board of Regents of the University System of Georgia, 633 F.3d 1297, 1310 (11th Cir. 2011). All three factors weigh against finding that the Defendants unambiguously terminated the offending conduct here.

As discussed in detail above, the Defendants' actions to purportedly "rescind" the CE and BiOp are anything but unambiguous.  See Section I.  For one thing, Defendants have disavowed neither analysis.  They have not committed to reinitating the NEPA process or ESA consultation.  Moreover, Defendants' actions have been carried out in an unorthodox, secretive way in the days leading up to a litigation deadline.  "If a governmental entity decides in a clandestine or irregular manner to cease a challenged behavior, it can hardly be said that its 'termination' of the behavior is unambiguous." Harrell v. The Fla. Bar, 608 F.3d 1241, 1266–67 (11th Cir. 2010) (relying on the fact the Bar "may have departed from its own procedures").  More broadly, the challenged BiOp and CE are part of a long list of similar development planned for areas in and around prime panther habitat and—left unchallenged—Defendants will likely apply the same legally inadequate analysis for these other highway development projects.[7]

---

[7] In addition to the expansions cited in the Complaint, ECF No. 24 ¶ 32, approximately 42 miles along I-75 South are slotted for an expansion that could include up to twelve lanes, as well as, the current doubling of 27 miles along SR 80.  I-75 CONNECT, FDOT, https://www.swflinterstates.com/i75-connect-south-corridor (2020); Florida Department of Transportation State Road 80 (W. Hickpochee Avenue) Improvements Construction Begins Late August (Aug. 2019), FDOT, http://www.swflroads.com/sr80/beecreektofortthompson.pdf; State Road 80 Design: Project Development, FDOT, http://www.swflroads.com/sr80/indianhillsdrtocr833/project_development.html (accessed

Defendants' actions also do not "appear to be the result of any 'substantial deliberation' that would indicate a sincere change in position" but rather appear to be an attempt to avoid judicial review.  Boards of Pharmacy, 633 F.3d at 1312.  Defendants have spent years planning the SR 29 project and going through NEPA review and ESA consultation, even though funding has not yet been secured.[8]  Now, Defendants ask the Court to honor a rushed exchange of emails as the deliberative position of agencies.  ECF Nos. 35-3 to 35-5.  Cessation this "late in the game" "will make a court 'more skeptical of voluntary changes that have been made.'"  Harrell, 608 F.3d at 1266 (internal citation omitted).

Additionally, Defendants continue to apply the same flawed analyses and determinations for road projects in panther territory and show no sign of applying a new policy that would prevent such violations in future CEs or BiOps.  Doe, 747 F.3d at 1323 (Defendants never promised to cease their challenged practice).  See Sequoia Forestkeeper & Earth Island Inst. v. U.S. Forest Serv., No. CV F 07-1690LJODLB, 2008 WL 2131557, at *3 (E.D. Cal. May 21, 2008) (action not moot even though agency argued "process, supporting analysis, and documentation for any future decision will be different" because challenged action "will probably happen again next year" with a similar NEPA analysis and "pretty much the same" forest management plan).

---

July 10, 2020); State Road 80 Design, FDOT, http://www.swflroads.com/sr80/daltonlntoindianhills (accessed July 10, 2020).
[8] See ECF No. 24 ¶¶ 33–35; ECF No. 35-1, at 2 (construction unfunded, but "anticipated"); Exhibit A, at 1–3, App'x A (same); SIS Plan (same); LRTP (same).

Although Defendants do not fully brief the voluntary cessation exception, they argue that the alleged violations are not likely to recur because the SR 29 expansion design <u>could</u> change in some unknown way at some unknown time in the future.  ECF No. 35, at 12.  As demonstrated above, however, such a speculative possibility provides no legal basis for un-doing an agency action that has been completed.  Defendants' argument belies the other possibility: that the project won't change, and that the agencies will simply and quietly "un-rescind" their latest decision by another exchange of emails.  Regardless, as a legal matter, further agency action requires that a project *has* changed, not that a project may change.  <u>City of Mukilteo v. U.S. Dep't of Tranp.</u>, 815 F.3d 632, 638 (9th Cir. 2016).  Defendants have not demonstrated that this is the case here.  Unsurprisingly, Defendants can only cite to a profoundly distinguishable case in support of this claim, where a violation could not recur because the defendants had completed a satisfactory NEPA analysis.  <u>Greater Yellowstone Coalition v. Tidwell</u>, 572 F.3d 1115, 1121 (10th Cir. 2009).

Defendants have failed to satisfy the "formidable" "heavy burden" of persuading the court that "the challenged conduct cannot reasonably be expected to start up again."  <u>Doe</u>, 747 F.3d at 1322.  To do this, they would have had to prove it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" based on the findings that (1) the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) Defendants' supposed "rescission" was motivated by a genuine change of heart not timed to anticipate suit; and (3) Defendants have

acknowledged liability." <u>Sheely v. MRI Radiology Network, P.A.</u>, 505 F.3d 1173, 1184 (11th Cir. 2007).  Defendants have not satisfied any of the requisite prongs.

For all of the reasons described in this Section, even if they were given legal effect, Defendants' actions are likely to reoccur, and Defendants have failed to show otherwise.  Plaintiffs' claims therefore fall under the voluntary cessation exception to mootness, and Defendants' motion must be denied

### B.   THE COURT CAN GRANT PLAINTIFFS MEANINGFUL RELIEF.

This Court can still grant Plaintiffs meaningful relief as Defendants have not disavowed their CE or BiOp, acknowledged that these agency actions were flawed, nor promised to remedy them.  Plaintiffs' requested declaratory judgment therefore would establish that the Defendants' actions violated federal law and ensure that Defendants complete proper supplemental NEPA and ESA analyses prior to construction of the SR 29 expansion.[9]  A declaratory judgment would accordingly remedy Defendants' statutory violations and "ensure that similar violations would not occur in the future."  <u>Forest Guardians v. Johanns</u>, 450 F.3d 455, 462 (9th Cir. 2006) (declaratory judgment finding Forest Service's failure to monitor utilization levels of cattle grazing in forest violated the ESA and triggered re-initiation of consultation "provide[d] effect relief by governing [the agency's] actions for the remaining permit term and by prohibiting it from continuing to violate the law" even though agency had already reinitiated consultation).

---

[9] Plaintiffs requested declaratory judgment that (1) USFWS violated and is violating the ESA and APA by failing to prepare a legally adequate BiOp for the SR 29 expansion; and (2) FDOT has violated and is violating NEPA and the APA by adopting and relying on a legally deficient CE.  ECF No. 24 ¶ ai-i.

Defendants' claim that a declaratory judgment would only serve as an advisory opinion fails.  Not only does this case continue to present a live controversy as to SR 29, the Court also has authority to issue declaratory relief to prohibit the Defendants from engaging in statutorily prohibited behavior in the future.  See, e.g., Forest Guardians, 450 F.3d at 462 ("In deciding such a case the court is not merely propounding on hypothetical questions of law, but is resolving a dispute which has present and future consequences").  Defendants cite Christian Coal v. Cole, 355 F.3d 1288, 1293 (11th Cir. 2004), where it was impossible for the alleged violations to recur because the defendants had withdrawn the challenged advisory opinion after the Supreme Court changed the legal landscape upon which the initial opinion was based.  As discussed in detail in Section II(A), Defendants' challenged conduct is likely to recur, particulary absent a judicial declaration that the agency actions are legally insufficient.  Declaratory judgment would accordingly remedy Defendants' statutory violations and "ensure that similar violations would not occur in the future."  See Forest Guardians, 450 F.3d at 462; see also DL v. D.C., 187 F. Supp. 3d 1, 18 (D.D.C. 2016) (alleged violations likely to recur); Fox v. TransAm Leasing, Inc., No. 2:12-CV-02706-JTM, 2017 WL 2080588, at *4 (D. Kan. May 15, 2017) (declaratory judgment may deter future violations).

Because the Court can grant meaningful relief, it should decline to grant prudential mootnesss.  Sierra Club v. U.S. Army Corps of Engineers, 277 Fed. App'x 170, 172 (3d Cir. 2008); Ingaseosas Intern. Co. v. Aconcagua Investing Ltd., 479 Fed. App'x 955, 962 (11th Cir. 2012).  "The central question relating to the issue of prudential mootness is whether factual or legal changes since the inception of the lawsuit have made

the court unable to provide any meaningful relief." Sierra Club, 277 Fed. App'x at 172–73. As explained above, this Court can still grant meaningful relief to Plaintiffs by declaring Defendants' conduct illegal and guiding Defendants' future NEPA analysis and ESA consultation.

Defendants argue that because future funding for the project is not in hand, the court should stay its hand and decline to adjudicate Plaintiffs' claims. ECF No. 35. Again, FDOT has not terminated or modified the project and continues to argue for its justification, ECF No. 35-3, and the lack of funding existed when Defendants' completed their NEPA analysis and ESA consultation.[10] NEPA analysis and ESA consultation are purposely conducted early on during the design phase when funding is not secured.[11]

Moreover, Defendants' reliance on Ingaseosas is misplaced. 479 F. App'x at 962 (in dicta, case prudentially moot because vacatur would likely not result in a return of already paid arbitration award). Id. at 963. Defendants' other cases are similarly distinguishable and unpersuasive. Sierra Club, 277 F. App'x at 172 (underlying action had already destroyed the wetlands that Plaintiffs sought to protect, thus, associated procedural harms "would not conceivably restore any wetlands"); In re Club Associates, 956 F.2d 1065, 1069 (11th Cir. 1992) (prudential mootness not raised; Defendant had substantially complied with its repayment of its bankruptcy debts thus constitutionally mooting case).

---

[10] See ECF No. 24 ¶¶ 33–35; ECF No. 35-1, at 2 (construction unfunded, but "anticipated"); Exhibit A, at 1–3, App'x A (same); SIS Plan (same); LRTP (same).
[11] SIS Plan (showing multiple projects moving forward without construction funding); LRTP (same). The Court may judicially notice documents available on government websites. Fed. R. Evid. 201(b); R.S.B., 514 Fed. App'x at 856, n.2.

Because declaratory judgment would grant Plaintiffs meaningful relief, Defendants' request to prudentially moot Claims I and III should be denied.

## III.     THE BIOP AND CE ARE FINAL AGENCY ACTIONS SUBJECT TO JUDICIAL REVIEW.

The issue of whether an agency action is final arises when an agency is actually in the process of completing said action.[12]  Despite its irrelevancy, Defendants' brief argues that Counts I and III fail to meet the Bennett criteria based on the alleged "rescission" of the BiOp and CE, suggests FDOT must determine whether and how to complete a NEPA analysis in the future, and claims FDOT must reinitiate consultation (in contradiction to USFWS' email stating FDOT "may" reinitiate).[13]  ECF No. 35, at 15.  Compare id. at 16

---

[12] See, e.g., Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1238 (11th Cir. 2003) (finding National Park Service's alleged "failure to discontinue the private occupancy" of stilted structures was not final agency action as the agency was actively engaged in planning for the structures management and had only "generated prospective governance proposals"); Canyon Tr. v. U.S. Bureau of Reclamation, No. CV-07-8164-PHX-DGC, 2010 WL 2643537, at *26–27 (D. Ariz. June 29, 2010) (finding USFWS' Humpback Chub Recovery Goals not to be final agency action because they were not complete and remained in draft form); Fund For Animals v. Williams, 391 F. Supp. 2d 132, 137 (D.D.C. 2005) (holding FWS' challenged Strategic Plan was not final agency action because it did not create binding obligations and implementation required "'subsequent discretionary actions requiring separate and independent decisionmaking'" (internal citations omitted)); Fund For Animals v. U.S. BLM, 357 F. Supp. 2d 225, 229 (D.D.C. 2004) (finding agency's challenged Restoration Strategy was not final agency action because "further agency action [was] necessary before any concrete action [would] be taken by the agency that might affect the rights of the plaintiffs")); Chem. Mfrs. Ass'n v. EPA, 26 F. Supp. 2d 180, 183–85 (D.D.C. 1998) (finding Settlement Policy was not final agency action as it was a starting point of EPA's decision making for settlements and intended to guide future agency actions).

[13] In a footnote, Defendants also argue that Plaintiffs lack standing and the case is not ripe because there is allegedly no final agency action.  However, as explained above, the BiOp and CE were final agency actions when Plaintiffs filed their complaint, thus post-filing actions at best implicate mootness arguments, not standing.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S. Ct. 693, 708–09, 145

with ECF No. 35-5.  Defendants issued the BiOp and CE after years of work, and they

mark the consummation of the agencies' decisionmaking process.  Bennett v. Spear, 520

U.S. 154, 178 (1997); Or. Nat. Desert Ass'n, No. 3:09-cv-00369-PK, 2012 WL

13051084, at *5 (D. Or. Sep. 28, 2012).  The agencies' alleged withdrawal of the CE and

BiOp have no legal effect, and do not render the actions "nonfinal" because the

underlying project has not been changed or terminated and the agencies have not

reinitiated ESA consultation or begun supplementing NEPA review.  See Section I.

Defendants' actual statements, as opposed to the written argument by counsel in their

motion, do not state or imply that NEPA review or ESA consultation are being reinitiated

thus rendering the BiOp or CE non-final.  ECF 35-3 to 35-5.

Moreover, Defendants provide no credible authority for their assertions.

Defendants solely rely on inapposite cases—none of which involve final agency actions

that are unceremoniously alleged to be nixed post-suit for reasons that existed before

their creation.  See Communities for a Great Northwest v. United States Department of

Interior, No. CV 07-98-M-DWM, 2008 WL 11417138, at *4 (D. Mont. Jan. 19, 2008)

(agency policy within BiOp was not a final agency action by itself where BiOp claim was

---

L. Ed. 2d 610 (2000) ("[T]he doctrine of standing set in a time frame: The requisite
personal interest that must exist at the commencement of the litigation (standing) must
continue throughout its existence (mootness).").  Moreover, because the alleged
violations in the BiOp and CE persist, see Section I, and Defendants have not shown they
are unlikely to recur, see Section II(A), Plaintiffs' claims remain ripe for review.  To the
extent Defendants could at some unknown point in the future alter its NEPA and ESA
analyses, that possibility fails to make Plaintiffs' claims unripe.  See Exxon Corp. v.
Train, 554 F.2d 1310, 1315 (5th Cir. 1977) (EPA's unilateral decision to grant plaintiff's
request for an adjudicatory hearing and undo its initial denial of the same did not make
unripe plaintiffs' petition for the court's review of EPA's initial denial).

mooted after BiOp was withdrawn because the previously consulted-on action was invalidated in a separate case and remanded to the agency to correct); National Parks Conservation Association v. United States Army Corps of Engineers, 574 F. Supp. 2d 1314, 1320 (S.D. Fla. 2008) (challenge to BiOp was moot when the underlying action (a dredge and fill permit) had expired and the project completed causing the BiOp to have no legal effect); Defenders of Wildlife v. Flowers, No. CIV 02-195-TUC-CKJ, 2003 WL 22145708, at *5 (D. Ariz. Aug. 18, 2003) (BiOp for a federal CWA permit was withdrawn after CWA permit program was transferred to state and defendants obtained a state-administered permit leaving no federal agency action subject to ESA consultation and eliminating any rights, obligations or legal consequences that could flow from the BiOp); Delaware Riverkeeper v. Simpson, No. CIV.A. 07-2489, 2008 WL 755947, at *3 (E.D. Pa. Mar. 17, 2008) (CE was no longer a final action after agency revoked CE, required an EA for the project at issue, and also suspended all federal funding until there was NEPA compliance); Envtl. Prot. Info. Ctr. v. Simpson Timber Co., 255 F.3d 1073 (9th Cir. 2001) (final agency action not in dispute).  Here, the underlying project has not been invalidated or modified, the agencies have not restarted their NEPA review or ESA consultation, and no superseding activity has revoked the federal nexus at issue.  Because the BiOp and CE are final agency actions, Plaintiffs should be permitted to proceed with their APA claims.

## CONCLUSION

This Court has subject matter jurisdiction over Count One and Count Three of Plaintiff's Amended Complaint.  Nothing in NEPA, the ESA, or their implementing rules

and guidelines authorize the Defendants to rescind the CE or render inoperative the BiOp.

Thus, Defendants' actions have no legal effect on the Plaintiffs' challenged actions.

Even if those unilateral decisions—taken after commencement of this suit and through

informal communications—were to be given effect, they do not nullify the Court's

adjudicatory authority because the alleged violations are likely to recur.  Moreover, the

Court is able to grant meaningful relief through declaratory judgment that would guide

any future NEPA and ESA analysis for the SR 29 expansion.  Finally, the challenged

BiOp and CE are final agency actions.  For the foregoing reasons, Plaintiffs respectfully

submit that Defendants' Motion to Dismiss should be DENIED.

Respectfully submitted this 10th day of July, 2020.


*/s/ Bonnie Malloy*
BONNIE MALLOY (Fl Bar No. 86109)
Earthjustice
111 S. Martin Luther King Jr. Blvd
Tallahassee, FL 32301
T: 850-681-0031
F: 850-681-0020
bmalloy@earthjustice.org

*/s/ Tania Galloni*
TANIA GALLONI (Fl Bar. No. 619221)
Earthjustice
4500 Biscayne Blvd., Ste 201
Miami, FL 33137
T: (305) 440-5432
F: 850-681-0020
tgalloni@earthjustice.org
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 10th day of July, 2020 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ Bonnie Malloy*
BONNIE MALLOY