UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SIERRA CLUB and ENVIRONMENTAL
CONFEDERATION OF SOUTHWEST
FLORIDA,

      Plaintiffs,

v.                                                            Case No.:  2:20-cv-13-FtM-38NPM

U.S. FISH AND WILDLIFE
SERVICE, AURELIA SKIPWORTH,
FLORIDA DEPARTMENT OF
TRANSPORTATION, KEVIN J.
THIBAULT, U.S. ARMY CORP OF
ENGINEERS and TODD T.
SEMONITE,

      Defendants.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendants' Opposed Joint Motion to Dismiss Counts One and Three of Plaintiffs' First Amended Complaint (Doc. 35), Plaintiffs' response (Doc. 39), Defendants' reply (Doc. 42), and Plaintiffs' surreply (Doc. 43).  For the following reasons, the Court denies the Motion.

## BACKGROUND

Eleven years ago, the Florida Department of Transportation (FDOT) began plans to widen 18 miles of State Road (SR) 29.[2]  During that process, FDOT was required by

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] State Road 82 is also at issue in this lawsuit, but the Motion to Dismiss involves only State Road 29.

federal environmental laws—namely, the Endangered Species Act (ESA) and the National Environmental Policy Act (NEPA)—to consult with the United States Fish and Wildlife Service (USFWS) to analyze any impacts the project would have on the endangered Florida Panther.

Ultimately, FDOT invoked a categorical exclusion (CE) to the applicability of NEPA, opining that the road expansion would not have significant effects on the environment. And the USFWS issued a biological opinion (BiOp), concluding that the road widening would adversely impact the Florida Panther but would not likely jeopardize the panther's continued existence. Plaintiffs challenge these agency actions as unlawful under the ESA, NEPA, and the Administrative Procedure Act (APA) and seek declaratory and injunctive relief to protect the Florida Panther.

After suit was filed, FDOT purportedly rendered the BiOp inoperative by rescinding the CE due to lack of funding. Because the CE and BiOp were the bases for Counts 1 and 3, Defendants argue Counts 1 and 3 are moot. In support, Defendants submit two emails and a letter. The first is an internal FDOT email requesting rescission of the CE because construction funding is not anticipated for at least ten years and there are no active state or federal environmental permits along the corridor. (Doc. 35-3). FDOT's Office of Environmental Management approved the request to rescind on June 5, 2020 (Doc. 35-4). Consequently, the USFWS did not consider its BiOP "to be operative." (Doc. 35-5). The USFWS' email to FDOT concluded: "When you are ready to go forward with the project, you may re-initiate consultation with the Service, per your current agreement with the [Federal Highway Administration] to conduct consultations, pursuant to Section 7 of the Endangered Species Act of 1973." (Doc. 35-5).

2

In response, Plaintiffs make two arguments: (1) that the agencies lacked authority to rescind the CE and BiOP; and (2) an exception to the mootness doctrine—voluntary cessation—applies. The Court agrees that based on Supreme Court and Eleventh Circuit precedent Defendants have not met their burden to show unambiguous termination of the challenged conduct. Counts 1 and 3 are therefore not moot. Defendants' finality argument—a thinly veiled rehash of their mootness argument—fails for the same reasons.

## DISCUSSION

### A. Mootness

Ultimately, "mootness is a jurisdictional issue," so Rule 12(b)(1) governs. *See Covenant Christian Ministries, Inc. v. City of Marietta, Ga.*, 654 F.3d 1231, 1239 n.4 (11th Cir. 2011). These attacks take two forms: facial and factual. *Meyer v. Fey Servicing, LLC*, 385 F. Supp. 3d 1235, 1229 (M.D. Fla. 2019). On a factual attack—like this one—the challenge goes to "subject matter jurisdiction in fact, irrespective of the pleadings." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). So courts "consider extrinsic evidence such as testimony and affidavits." *Id.* If a defendant claims "voluntary compliance moots a case," it "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Article III of the Constitution, known as the case and controversies limitation, prevents federal courts from deciding moot questions because the Court lacks subject matter jurisdiction. U.S. CONST. art. III. Mootness can occur due to a change in circumstances or a change in law. *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371

F.3d 1320 (11th Cir. 2004). A case is also moot when the issue presented is no longer live, the parties lack a legally cognizable interest in its outcome, or a decision could no longer provide meaningful relief to a party. *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d. 1276 (11th Cir. 2004); *Christian Coal. of Ala. v. Cole*, 355 F.3d 1288 (11th Cir. 2004); *Crown Media LLC v. Gwinnett County, Ga*, 380 F.3d. 1317 (11th Cir. 2004). Dismissal is not discretionary but "is required because mootness is jurisdictional. Any decision on the merits would be an impermissible advisory opinion." *Troiano*, 382 F.3d at 1282 (citing *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335-36 (11th Cir. 2001)).

That said, there is an exception to the mootness doctrine for those cases in which a defendant voluntarily ceases the challenged practice. "It is well settled that when a defendant chooses to end a challenged practice, this choice does not always deprive a federal court of its power to decide the legality of the practice." *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "It is no small matter to deprive a litigant of the rewards of its efforts....Such action on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *Id.* at 1319. Thus, a defendant who claims to have mooted an action by his own conduct "bears a formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 1322; *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 531 (11th Cir. 2013) ("Since the defendant is free to return to his old ways, he bears a heavy burden of demonstrating that his cessation of the challenged conduct renders the controversy moot.").

A government actor who voluntarily ceases alleged wrongful conduct is entitled to a "rebuttable presumption" or a "lesser burden" that the conduct will not recur, but only if it demonstrates "unambiguous termination of the challenged conduct." *Wooten*, 747 F.3d at 1322. The presumption may be rebutted by "some reasonable basis to believe that the [conduct] will be reinstated if the suit is terminated." *Id.* In evaluating whether there is a reasonable basis the challenged conduct will recur, the Eleventh Circuit considers these factors:

> (1) whether the termination of the offending conduct was unambiguous; (2) whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction; and (3) whether the government has consistently applied a new policy or adhered to a new course of conduct.

*Id.* at 1322-23 (internal quotation marks omitted). Timing matters. "[T]he timing and content of the decision are...relevant in assessing whether the defendant's 'termination' of the challenged conduct is sufficiently 'unambiguous' to warrant application of the...presumption in favor of governmental entities." *Rich*, 716 F.3d at 531-32.

Voluntary cessation likely will not moot a controversy if the government actor provides no assurance it will not reinstate the challenged practice after the litigation ends, or if the circumstances suggest the defendant voluntarily ceased the offending conduct to avoid litigation. See *Sheeley v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007); *Rich*, 716 F.3d at 531-32.

Applying the above factors to the limited record the Court has before it, Defendants fail to meet their "formidable" burden to show the challenged conduct has been "unambiguously terminated" or that the allegedly wrongful conduct will not recur after this litigation ends. Defendants are not entitled to the lesser burden because they have not

shown unambiguous termination of the challenged conduct. What is more, the language of Defendants' emails provides a "reasonable basis to believe that the [conduct] will be reinstated if the suit is terminated." *Wooten*, 747 F.3d at 1322.

The FDOT internal emails state that the "purpose of this project was to widen State Road 29 from two to four lanes within the project limits, to improve level of service along the roadway, accommodate future population and employment growth, and enhance safety conditions." (Doc. 35-3). The email also states that the latest traffic analysis along the SR 29 corridor meets the threshold for widening the roadway by the year 2025. (Doc. 35-3). And it concludes, "Any future environmental action within this corridor will include the most recent data and information relating to the environmental and economic landscape of the project area and will comply with the appropriate state and federal requirements." (Doc. 35-3). In other words, Defendants have simply delayed the project's implementation, and the need for this road project remains. The equivocation continues int the USFWS email to FDOT: "we are aware the FDOT *intends* to rescind the type II categorical exclusion for the State Road 29 from State Road 82 to County Road 80A project." (Doc. 35-5 (emphasis added)). Although the email concludes that USFWS "does not consider" the BiOp "to be operative" (itself an ambiguous statement), it invited FDOT to re-initiate consultation when they are ready to go forward with the project. (Doc. 35-5). But Defendants have never said that they would not continue with the current plans for SR 29, just that they would do so ten years down the road. Thus, it is not "absolutely clear that [Plaintiffs] no longer had any need of the judicial protection" they seek, *see Wooten*, 747 F.3d at 1319, and Counts 1 and 3 are not moot.

**B. Finality**

6

Absent specific statutory authorization, courts may review agency actions only if they are final. 5 U.S.C. § 704. An agency action is final if two conditions are met:

> First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations and quotation marks omitted). Defendants purport to challenge the finality of the CE and BiOp, but stripped of its façade, their finality argument is merely a restatement of their mootness claim. (*See, e.g.*, Doc. 35 at 15 ("Here, because the CE and [BiOp] have been rescinded, there is not any remaining agency action with respect to the SR 29 project, as is required by the APA for this Court's review.")).

Defendants do not contest that the CE and BiOp were final agency actions when Plaintiffs sued. Defendants instead argue the actions are no longer final because the agencies must revisit their decisions before proceeding with the SR 29 project in the future. But the possibility that the agencies might reverse course based on new information "does not make an otherwise definitive decision nonfinal." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1814 (2016). And the internal correspondence presented by Defendants do not eliminate the legal consequences of the CE and BiOp. *See Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1268 (D.C. Cir. 2018) (contrasting a final, formal, published report with an informal letter by a subordinate official because the letter was nonbinding and could be rescinded at any time without notice). The CE and BiOp thus satisfy the APA's finality requirement.

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Dismiss Counts 1 and 3 (Doc. 35) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 19th day of August, 2020.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

8