UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SIERRA CLUB and
ENVIRONMENTAL
CONFEDERATION OF
SOUTHWEST FLORIDA,

        Plaintiffs,

v.                                          Case No: 2:20-cv-13-SPC-NPM

U.S. FISH AND WILDLIFE
SERVICE, AURELIA
SKIPWORTH, FLORIDA
DEPARTMENT OF
TRANSPORTATION, KEVIN
J. THIBAULT, U.S. ARMY
CORP OF ENGINEERS, and
TODD T. SEMONITE,

        Defendants.
_____/

## ORDER[1]

Before the Court are Plaintiffs' Partial Objections to Magistrate Judge's Order (Doc. 109) and Defendants' response (Doc. 110). Plaintiffs make Rule 72(a) objections to Judge Mizell's Order, which struck two out-of-the-record

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

exhibits (among others) and refused to take judicial notice of them ("Order"). (Doc. 108).

Because the Court writes only for the parties (who are familiar with the facts), it only includes what is necessary to explain the decision. In doing so, the Court overrules the objections.

Under Federal Rule of Civil Procedure 72(a), a party may object to a magistrate judge's order on a nondispositive matter. The district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is clearly erroneous if the reviewing court, after assessing the evidence in its entirety, is left with definite and firm conviction that a mistake has been committed." *A.R. by and through Root v. Dudek*, 151 F. Supp. 3d 1309, 1312 (S.D. Fla. 2015) (citation omitted). "A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (citation omitted); *see* (Doc. 103 at 3-4).

Before beginning, the Court addresses Plaintiffs' suggestion it should rule on the objections without awaiting a response. Despite Rule 72(a)'s silence, the Rules Committee recognized the right to oppose objections about forty years ago. Fed. R. Civ. P. 72(a) advisory committee's note to 1983 amendment ("It is also contemplated that a party who is successful before the magistrate will be afforded an opportunity to respond to objections raised to

the magistrate's ruling."). And courts generally agree a party has the chance to respond when its opponent asks to reverse a court order via Rule 72(a). *Carrier-Tal v. McHugh*, No. 2:14cv626, 2016 WL 9185306, at *1 (E.D. Va. Feb. 3, 2016); *Nat'l Sav. Bank of Albany v. Jefferson Bank*, 127 F.R.D. 218, 223 n.13 (S.D. Fla. 1989). This one does too, so it awaited Defendants' response and considers the filing.

Now, onto the merits.

Plaintiffs challenge the Order as it relates to Exhibits 13 and 14. The Court did not expect Judge Mizell to issue a line-by-line ruling on the thousands of pages Plaintiffs wanted judicially noticed. In short, it agrees with the Order and overrules the objections for the same reasons. To the extent that discussion is necessary on the specific Exhibits, the Court still concludes Plaintiffs did not meet their burden. *See Gov't Emps. Ins. v. Glassco Inc.*, No. 8:19-cv-1950-KKM-JSS, 2021 WL 3930508, at *8 (M.D. Fla. Sept. 2, 2021) (noting burden is on party assigning error).

First, the Court summarily rejects Plaintiffs' argument as to Exhibit 14. (Doc. 92-20). Anything subject to judicial notice must be relevant. *E.g.*, *United States v. Alindor*, 799 F. App'x 678, 684-85 (11th Cir. 2020); *United States v. Cropper*, 812 F. App'x 927, 931 n.3 (11th Cir. 2020). Exhibit 14 isn't. It is a biological opinion from a project to build a natural gas processing plant in southern Texas. Whether Defendants could estimate traffic risk to the ocelot

3

and jaguarundi there is entirely irrelevant here. So the Order did not err in excluding Exhibit 14.

Second, Exhibit 13 is a much closer call, but the answer is the same. (Doc. 92-19). Exhibit 13 is a biological opinion Defendants prepared for a project to build a park in Collier County, which addressed the risk to panthers. At this point, the document is irrelevant. So the Order committed no reversible error.

Plaintiffs fail to recognize Exhibit 13 set take limits in the same ultimate manner as the Subject Opinions. It said:

> The Service anticipates that incidental take of the panther will be difficult to detect and quantify . . . . Therefore, the Service will use 55.7 ac of panther habitat as a surrogate for the number of individuals taken. . . . The Service finds that no more than 55.7 ac of habitat at the Project site will be incidentally taken as a result of the proposed action. If, during the course of the action, this level of incidental take is exceeded, such incidental take would represent new information requiring review of the reasonable and prudent measures provided. . . . [R]einitiation of formal consultation is required . . . if: (1) the amount or extent of incidental take is exceeded (55.7 ac of panther habitat) . . . .

(Doc. 92-19 at 17-19); *see also* (Doc. 62-14 at 17-19, 24; Doc. 66-7 at 17-20). This is confusing because Plaintiffs' theory is (in part) that the Subject Opinions are deficient for setting take in habit acreage instead of panthers. Yet that is exactly what Exhibit 13 did.

4

True, Exhibit 13 also addressed take from increased traffic. (Doc. 92-19 at 15). The opinion used various data "to estimate the risk to [sic] for panther mortality due to anticipated Project-generated traffic." (Doc. 92-19 at 15). This analysis stemmed from a comprehensive traffic impact study, which Defendants ordered for that project. (Doc. 92-19 at 3, 14-15, 26-32, 36, 42). Plaintiffs misrepresent Exhibit 13 as "setting numerical take limits for traffic collisions." (Doc. 109 at 2). Exhibit 13 never set a take limit in panthers for car accidents or any other threat because Defendants there—as here—determined take in habit acreage. Rather, within its biological opinion, Defendants considered whether they "anticipated" increased take of panthers from traffic. (Doc. 92-19 at 15). If Exhibit 13 had set a take limit in panthers, it might be relevant now. But once more, Defendants did not do so there. Instead, Defendants appear to have used the same rationale to employ the same method of setting take.

The case in which Plaintiffs place all their reliance is easily distinguished. *Sierra Club v. U.S. Dep't of Interior*, 899 F.3d 260, 275-76 (4th Cir. 2018). There, defendant decided against setting a numeric take limit for mussels because they were difficult to detect. In rejecting that decision, the court—in part—took judicial notice of defendant's prior incidental take statement. That earlier statement set a numeric take limit for the mussels. Again, this case differs. No matter how Plaintiffs want to characterize Exhibit

5

13, the document speaks for itself: Defendants did *not* set a numeric panther take limit there. (Doc. 92-19 at 17 ("Therefore, the Service will use 55.7 ac of panther habitat as a surrogate for the number of individuals taken.")). And Defendants have not yet made an argument which might make Exhibit 13 relevant.

As the Court mentions, Exhibit 13 could become relevant and maybe subject to judicial notice. It cannot, however, determine that question at this time because the document would only be relevant as rebuttal to Defendants' position. Indeed, in *Sierra Club* and the case it relied on (*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 422 F. Supp. 2d 1115 (N.D. Cal. 2006)), prior incidental take statements were relevant and noticed to rebut defendant's contention on why setting a numerical take limit was not practical. Here, summary judgment has been mooted. Defendants have not yet made any argument Exhibit 13 might cast doubt on. So whether Defendants could calculate an estimated take for unrelated projects and how that might factor into setting take is irrelevant at this point. Until it becomes relevant (if ever), it is improper to expand the administrative record with this document.

What's more, there are unbriefed differences between the Subject Opinions (not to mention the Project) and Exhibit 13. The Court reiterates it will stick to this administrative record unless there's reason to depart from that bedrock principle, and—regardless—we are not here to litigate whether

take was properly determined in some other administrative action. Exhibit 13 relied on a comprehensive traffic impact study, which does not appear to be part of this record. Additionally, there may have been reasons for including that study in earlier administrative reviews without doing so here. For instance, Exhibit 13 concerned a project within a "hot spot"—where many panthers were tragically killed by cars. (Doc. 92-19 at 10). Given the apparent differences, the Court will not notice the document unless it is shown proper and relevant to the issues at hand.

At bottom, with or without Exhibit 13, Plaintiffs can argue Defendants' actions were unlawful. For instance, they may attack the failure to express numerical take, challenge Defendants' explanation, question the lack of a traffic study, or the like. Exhibit 13 might only become relevant though based on Defendants' response. In other words, it is potential rebuttal Plaintiffs can address (if necessary) in reply.

Before concluding, the Court sees fit to address two case management matters. First, Defendants have filed a Joint Motion for Judgment on the Pleadings (Doc. 105) that has been referred to the assigned Magistrate Judge for a report and recommendation. Because the Motion raises jurisdictional arguments, the Court will administratively close this case until that motion is resolved. Second, to streamline the Motion (and this action) for both the parties and the Court, consent to the assigned Magistrate Judge seems

7

sensible, especially given his in-depth familiarity with this case. *See* 28 U.S.C. § 636(c); *see also* Fed. R. Civ. P. 1 (requiring "courts and parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). As a reminder, litigants can consent for "any or all" purposes. 28 U.S.C. § 636(c)(1). So they may consent for the entire case (Form AO 85), or just specified matters like motions (Form AO 85A). The parties thus are encouraged to discuss consent among themselves. Of course, either party is may withhold consent without any adverse consequence. 28 U.S.C. § 636(c)(2). If the parties intend to consent, however, the Court directs them to file the appropriate notice of consent form referenced above.

Accordingly, it is now

**ORDERED:**

1. Plaintiffs' Objections to Magistrate Judge's Order (Doc. 109) are **OVERRULED**.

2. The Clerk is **DIRECTED** to **administratively close** this action until further Court notice.

**DONE** and **ORDERED** in Fort Myers, Florida on October 18, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record