UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SIERRA CLUB and
ENVIRONMENTAL
CONFEDERATION OF
SOUTHWEST FLORIDA,

    Plaintiffs,

v.   Case No.: 2:20-cv-13-SPC-NPM

U.S. FISH AND WILDLIFE
SERVICE, AURELIA
SKIPWORTH, FLORIDA
DEPARTMENT OF
TRANSPORTATION, KEVIN J.
THIBAULT, U.S. ARMY CORP OF
ENGINEERS and TODD T.
SEMONITE,

    Defendants.
_____/

**OPINION AND ORDER**[1]

Before the Court is United States Magistrate Judge Nicholas P. Mizell's Report and Recommendation ("R&R"). (Doc. 112). Judge Mizell recommends denying Defendants' Motion for Judgment on the Pleadings (Doc. 105). Defendants Kevin J. Thibault and the Florida Department of Transportation

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

(collectively "FDOT") have objected to the R&R[2] (Doc. 116), and Plaintiffs have responded (Doc. 117). After a careful and independent review of the parties' papers, record, and applicable law, the Court overrules FDOT's objections and denies their Motion.

## BACKGROUND[3]

This case involves the expansion of a stretch of State Road 82 (SR-82). Because the stretch is in a Florida panther habitat zone, the Florida Department of Transportation had to comply with the Endangered Species Act ("ESA"), the National Environmental Policy Act ("NEPA"), and the Administrative Procedure Act ("APA"). To that end, environmental assessments, permits, a biological opinion, and an amended biological opinion were issued. The biological opinions concluded that the widening of SR-82 would have an adverse impact on the Florida panther but would not likely jeopardize the panther's continued existence. (Doc. 65 at 10-11).

Plaintiffs sued seeking declaratory and injunctive relief, filing their first Complaint in January 2020 and the operative (Second Amended) Complaint in January 2021. (Doc. 1, Doc. 65). The action is entering its fourth year. In that

---

[2] No other objections were filed.

[3] Because "[t]his action involves complicated regulatory machinery and has a detailed factual background which the court has described in prior orders, and with which the parties are intimately familiar," (Doc. 112 at 1), the Court provides a simplified and abbreviated factual background.

time (in 2022), the expansion project finished, and the newly enlarged SR-82 is operating. So Defendants moved for judgment on the pleadings, arguing the project's completion has mooted this action. (Doc. 105). Plaintiffs disagree, and so does the R&R.

## LEGAL STANDARD

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* And legal conclusions are reviewed de novo even without any objection. *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## DISCUSSION

A motion for judgment on the pleadings should be granted only when "it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (citing *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)). The Court must view all facts in the complaint "in the light most favorable to the nonmoving party." *King*, 775 F. App'x at 620 (citing *Scott v. Taylor*, 405 F.3d 1251, 1252 (11th Cir. 2005)).

While couched in three different ways, all FDOT's objections to the R&R[4] fundamentally argue that because the expansion of SR-82 is complete, the case is moot. First, FDOT broadly objects to the R&R's rejection of the argument that SR-82's completed expansion moots Plaintiffs' claims. FDOT contends the R&R overlooks binding precedent: *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100 (5th Cir. 1981) and *Fla. Wildlife Fed'n v. Goldschmidt*, 611 F.2d 547 (5th Cir. 1980).[5]

Second, FDOT contends the ESA's citizen suit provision does not apply to "wholly past violations," so even if the ESA was violated, the project's completion means Plaintiffs cannot maintain an ESA claim. This is a case law-specific variation on the mootness theme.

Third, FDOT argues Plaintiffs' prayers for declaratory relief do not impact the mootness analysis because no meaningful relief can come from revisiting the permit and biological opinions when the permitted activities have already been completed. This too, is a mootness argument—this case is

---

[4] FDOT's three objections to the R&R are the same grounds it raises in its Motion for Judgment on the Pleadings (Doc. 105). While there are some small differences, for the most part FDOT copies and pastes the same general legal arguments into its Objections that it previously argued in its Motion. FDOT then summarily asks the Court to do the opposite of the R&R's recommendation. These are not objections so much as they are improper re-argument. Nonetheless, they have been considered.

[5] This precedent is binding because all Fifth Circuit opinions handed down before close of business on September 30, 1981, constitute binding precedent on the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

4

moot because construction is complete, and an otherwise moot case cannot be saved by the Court's ability to grant declaratory relief.

So with regard to all Defendants' arguments and objections, the inquiry is simply this: Given that construction is now complete, is this case moot? The answer: No.

A party seeking to establish mootness bears a heavy burden. *See Norwegian Cruise Line Holdings Ltd. v. State Surgeon Gen., Fla. Dep't of Health*, 55 F.4th 1312, 1315 (11th Cir. 2022). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hail,* 996 F.2d 1173, 1175 (11th Cir. 1993) (citation omitted). A live "case or controversy" exists when "a litigant [has] suffered, or [is] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Chafin v. Chafin,* 568 U.S. 165, 172 (2013) (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990)). A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin,* 568 U.S. 165 (2013) (quoting *Knox v. Service Employees*, 567 U.S. 298, 307 (2012)).

The Court is unpersuaded that this case is moot. Defendants rely on *Save the Bay* and *Goldschmidt* to support the proposition that "environmental challenges to . . . construction projects are moot once the construction that was the subject of the federal action is complete." (Doc. 116 at 10-11). But FDOT's

statement is too broad by far,[6] and *Goldschmidt* and *Save the Bay* are dissimilar to the case here.

In *Goldschmidt*, the Court "conclude[d] that this case has become moot . . . because of substantial completion of the only portion of the highway construction *sought to be enjoined* for which no environmental impact statement was prepared." *Id.* at 548 (emphasis added).[7] The Fifth Circuit's analysis is conclusory, relying heavily on cherry-picked language from *Friends of the Earth v. Bergland,* 576 F.2d 1377 (9th Cir. 1978)[8] and failing to provide any legal standard by which to assess mootness. However, it appears that the *Goldschmidt* plaintiffs sought to enjoin construction (and construction funding) so environmental impact statements could be prepared for portions of the highway that—by the time the case reached the Fifth Circuit—

---

[6] As courts both within and outside this Circuit have said, "Following Defendant's argument to its logical end, federal agencies could circumvent compliance with NEPA by completing the agency action before a case is heard on the merits." *Indian Riverkeeper v. FHA,* No. 05-14005-CIV, 2007 WL 9702370, at *5 (S.D. Fla. Mar. 21, 2007) (citing *Columbia Basin Land Protection Ass'n v. Shlesinger,* 643 F.2d 585, 592 (9th Cir. 1981). *See also Feldman v. Bomar,* 518 F.3d 637, 642-43 (9th Cir. 2008) (collecting cases in which the Ninth Circuit found "'live' controversies in environmental cases even after the contested government projects were complete. In each of those cases . . . [the court] could nonetheless remedy the alleged harm").

[7] In *Goldschmidt*, the plaintiff also asked for other relief, such as declaratory and mandamus relief. *Id.* at 547. The Fifth Circuit did not provide any analysis of these requests, and accordingly the Court does not find meaningful precedential value in whether these requests were granted or denied.

[8] The Fifth Circuit's reliance on Ninth Circuit case law is noteworthy given the stance the Ninth Circuit has taken on mootness in environmental cases. *See supra* note 6.

environmental impact statements had already been prepared for. *Id.* at 549.[9] This is not the issue presented in the case before this Court.

Like the *Goldschmidt* plaintiffs, the plaintiffs in *Save the Bay* sought to enjoin construction (this time, of a railroad). *Save the Bay*, 639 F.2d at 1101.[10] By the time the case reached the Fifth Circuit, the railroad was complete and had been operational for more than a year. *Id.* at 1102. The Fifth Circuit concluded that because "Plaintiff sought only to *enjoin construction* . . . the request that construction be stopped posits no possible prayer for relief now that construction is completed." *Id.* at 1103 (emphasis added). This is *also* not the issue presented in this case.

Plaintiffs here frame their injury as the (allegedly unlawful) takings of Florida panthers:

> Plaintiffs' members use wildlife areas within the Florida Panther's habitat for recreational, aesthetic, scientific, and educational purposes. Plaintiffs' members *have visited, observed, or sought to observe the Florida Panther within its habitat and intend to continue to do so in the near future*. Plaintiffs' members derive recreational, conservation, scientific, and aesthetic benefits *from these rare species' existence in the wild through observation, study, photography, and recreational activities* within the Florida Panther's habitat. The above-described aesthetic, conservation, recreational, and scientific interests of Plaintiffs and their respective members have been, are

---

[9] The plaintiffs also alleged that "the highway project was improperly segmented for environmental study," but the Fifth Circuit declined to consider this issue. *Id.* at 548, 549.
[10] In *Save the Bay*, the plaintiff also asked for other relief, such as monetary damages and declaratory judgment. *Id.* at 1101. The Fifth Circuit did not provide any analysis of these requests, and accordingly the Court does not find meaningful precedential value in whether these requests were granted or denied.

7

> being, and—unless the relief prayed for herein is granted—will continue to be adversely affected and irreparably injured by the Defendant Agencies' failure to comply with NEPA and the ESA as described below.

([Doc. 65 at 6](Doc. 65 at 6)) (emphasis added).

FDOT argues that there is no live case or controversy because construction is complete. But the dispute is not—as FDOT frames it—the expansion of SR-82. The dispute, as outlined in the complaint, is whether the USFWS or Army Corps of Engineers violated NEPA, ESA, or APA through failure to consider certain impacts the SR-82 expansion would have on the Florida panther.[11] The effects of these alleged violations on the Florida panther—and corresponding harm to Plaintiffs—are ongoing post-construction. So the controversy remains "live."

Still, FDOT objects that any alleged violations of the ESA are "wholly past" and therefore barred by the reasoning in *Gwaltney v. Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49 (1987).[12] FDOT's analysis of this issue is perfunctory. FDOT makes no attempt to persuade the Court that this case is

---

[11] The complaint basically alleges three things: (1) the USFWS' biological and amended biological opinions violate the ESA and APA because they fail to assess the true impacts of construction and the effects these impacts will have on the panther, (2) the Army Corps of Engineers' environmental assessment for SR-82 (and its supplement) violates NEPA and APA for essentially the same reason, and (3) the Army Corps of Engineers' arbitrary reliance on the USFWS' inadequate biological opinion for SR-82 (and amended biological opinion) violates the ESA.

[12] FDOT provides more string cite than argument on this point. The Court focuses its analysis on *Gwaltney* because *Gwaltney* is the only binding precedent cited by FDOT on this issue.

8

like *Gwaltney,* which concerned plaintiffs that sued under the Clean Water Act based on the defendant's failure to comply with a National Pollutant Discharge Elimination System (NPDES) permit at various times from 1981 through May 15, 1984. *Id.* at 53. The *Gwaltney* plaintiffs did not file suit until June 1984—after the defendant had violated the permit for the last time and after the defendant's installation of new equipment that was supposed to prevent future NPDES permit violations. *Id.* at 54. Here, Plaintiffs filed while the construction project was ongoing and—as discussed above—allege a different, ongoing harm.

Of note, FDOT also fails to address the ongoing split regarding how to interpret *Gwaltney*'s "wholly past violation" language. *See City of Mt. Park v. Lakeside at Ansley, LLC,* 560 F. Supp. 2d 1288, 1293-1296 (N.D. Ga. 2008) (explaining that the Eleventh Circuit "has not directly ruled on" what constitutes a "wholly past violation" and outlining various courts' interpretations). The Court is not persuaded that *Gwaltney*'s holding bars this action, especially considering the ESA's purpose,[13] the differing opinions on

---

[13] *See Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 184 (1978) (examining the legislative purpose of the ESA and concluding that "[t]he plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost"); 16 U.S.C. § 1536(a)(2) ("Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species"). *See also* 16 U.S.C. § 1538(a)(1)(B) (creating a blanket prohibition on takings of endangered

what constitutes a "wholly past violation," the ongoing impacts of the alleged ESA violations on the Florida panther, and the distinguishable facts of *Gwaltney*.

This leaves FDOT's final objection—that the case is moot because the Court cannot provide meaningful relief. *See Ethredge v. Hail,* 996 F.2d 1173, 1175 (11th Cir. 1993) ("A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief"). Defendants argue that finding the biological opinion(s), environmental assessment(s), or resulting permit(s) arbitrary and capricious now that construction is complete would not provide meaningful relief "because considering such factors after-the-fact would not inform the permit decision or prevent the permitted activities." (Doc. 116 at 13-14). But the Court's ability to grant relief is not limited to vacating construction permits or enjoining construction, and a case becomes moot "only when it is impossible for a court to grant *any effectual relief whatever* to the prevailing party." *Chafin v. Chafin,* 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps.,* 567 U.S. 298, 307 (2012)) (emphasis added).

Defendants, citing *Bayou Liberty Ass'n v. United States Army Corps of Engineers,* 217 F.3d 393, 397 (5th Cir. 2000) and *Finca Santa Elena, Inc. v.*

---

species and then narrowly enumerating exceptions "as provided in sections 6(g)(2) and 10 of this Act").

10

*U.S. Army Corps of Engineers*, 62 F. Supp. 3d 1, 5 (D.D.C. 2014), argue that any relief other than vacating the construction permit or enjoining construction is a "theoretical" or "imagined possibility" which the Court cannot grant. But in these cases (which are not binding on this Court), the courts found prospective relief to be unacceptably "theoretical" because such relief had not been requested by the plaintiffs in their complaints. *Bayou Liberty Ass'n,* 217 F.3d at 397-98; *Finca Santa Elena, Inc.*, 62 F. Supp. 3d at 5. That is not the case here, as the complaint contemplates relief beyond simply enjoining construction.

Accordingly, it is now

**ORDERED:**

(1) United States Magistrate Judge Nicholas P. Mizell's Report and Recommendation (Doc. 112) is **ACCEPTED** and supplemented by this Opinion and Order.

(2) Defendants' Motion for Judgment on the Pleadings (Doc. 105) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on March 20, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

11